**In the United States District Court
for the District of Kansas**

———————

Case No. 21-cv-02306-TC-TJJ

———————

PRIMERICA LIFE INSURANCE CO.,

*Plaintiff*

v.

ZACHARY ARNOLD, ET AL.,

*Defendants*

———————

**MEMORANDUM AND ORDER**

This is an interpleader action in which the proceeds of a life insurance policy are at issue between the primary beneficiary, Defendant Zachary Arnold, and the contingent beneficiary, Defendant JoAnn Mockobey. Doc. 1. A jury convicted Arnold of killing his father and, as a result, Mockobey moves for summary judgment claiming that Arnold's conviction for that felony precludes him from receiving his father's life insurance benefit. Doc. 36. For the following reasons, her motion is denied.

**I**

**A**

**1.** Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "'material' if it might affect the outcome of the suit under the governing law." *Janny v. Gamez*, 8 F.4th 883, 898 (10th Cir. 2021) (quoting *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997)). And disputes over material facts are "'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Allen*, 119 F.3d at 839). Disputes—even hotly contested ones—over facts that are not essential

1

to the claims are irrelevant. Indeed, belaboring such disputes undermines the efficiency Rule 56 seeks to promote.

At the summary judgment stage, material facts must be identified by reference to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1173 (10th Cir. 2020). Affidavits or declarations "used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on matters stated." Fed. R. Civ. P. 56(c)(4); *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1163 (10th Cir. 2021). The court "construe[s] the factual record and reasonable inferences therefrom in the light most favorable to the nonmovant." *Janny*, 8 F.4th at 899 (quoting *Allen*, 119 F.3d at 839–40). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *id.*, or unsupported by the record as a whole, *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Heard v. Dulayev*, 29 F.4th 1195, 1202 (10th Cir. 2022).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters. *Celotex*, 477 U.S. at 324; *Savant Homes*, 809 F.3d at 1137. Any facts alleged by the movant and not specifically controverted by the nonmoving party "will be deemed admitted for the purpose of summary judgment." D. Kan. R. 56.1(a).

**2.** This case involves interpretation and application of Kansas statutes and common law. As a result, decisions of the Kansas Supreme Court govern the legal analysis. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (citing *High Plains Nat. Gas Co. v. Warren Petroleum Co.*, 875 F.2d 284, 288 (10th Cir. 1989)). If a law is ambiguous, a federal district court must look to the Kansas Supreme Court's rulings, "and if no such rulings exist, [it] must endeavor to predict how the high court would rule." *Finstuen v. Crutcher*, 496 F.3d 1139, 1148 (10th Cir. 2007) (quoting *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir. 2006)). In doing so, "decisions rendered by lower courts in [Kansas], appellate decisions in other states with similar legal

principles, district court decisions interpreting the law of [Kansas], and the general weight and trend of authority in the relevant area of law" may properly guide the analysis. *Shrock*, 727 F.3d at 1280 (quoting *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007)).

**B**

In October 2019, Arnold had an argument with his father. Doc. 41 at ¶¶ 2, 12(a). Although his father never threatened him during the argument, at some point, Arnold grabbed his father's arm, intending to remove the pistol he was carrying in a holster on his body. *Id.* at ¶¶ 12(b)–(c), (e), (l)–(m). When Arnold managed to grab the pistol, he removed it from the holster, released the safety, and pointed it at his father. *Id.* at ¶¶ 12(g), (i)–(j). The pistol then discharged, firing a bullet into his father's head and killing him. *Id.* at ¶¶ 2, 12(h)–(k). Arnold was subsequently charged with and convicted by a Kansas jury of reckless involuntary manslaughter in violation of K.S.A. 21-5405(a)(1), a severity level 5, person felony. *Id.* at ¶¶ 9–10; Doc. 41-2 at 10; Kan. Stat. Ann. § 21-5045(b)(1)(A). His appeal of that conviction remains pending. Doc. 41 at ¶ 11.

At the time of his death, Arnold's father was unmarried and was survived by one child—Arnold—and two sisters. Doc. 41 at ¶¶ 1, 3, 5. He also owned a life insurance policy, issued by Plaintiff Primerica Life Insurance Company, which named his son, Arnold, as beneficiary and one of his sisters—Defendant JoAnn Mockobey—as contingent beneficiary. *Id.* Both Arnold and Mockobey have plausible claims to the death benefit. Doc. 1 at ¶ 9; Doc. 8; Doc. 10. Uncertain which Defendant was entitled to it, Primerica filed this interpleader action to determine whose claim should prevail. Doc. 1 at ¶¶ 17–18. After Mockobey and Arnold each filed an answer to Primerica's complaint, Docs. 8 & 10, Primerica deposited the funds at issue into the Court's registry and was dismissed with prejudice, Doc. 18 at 2–3; Doc. 19 at 1.

Mockobey then moved for summary judgment. Doc. 36. As Arnold is a pro se party, Mockobey served and filed all relevant papers as required by D. Kan. Rule 56.1(d). Doc. 42. Arnold failed to respond to her motion. All of the facts Mockobey alleged in her brief in support of her motion are therefore "deemed admitted for the purpose of summary judgment." D. Kan. R. 56.1(a).

## II

Mockobey argues both the Kansas slayer statute, K.S.A. § 59-513, and the Kansas common-law slayer rule prevent Arnold from recovering the proceeds of his father's life insurance policy. Doc. 41 at 6. But because Mockobey has not adequately shown she is entitled to judgment under either law, her motion for summary judgment is denied.

### A

Under the Kansas slayer statute, "[n]o person convicted of feloniously killing . . . another person" may receive the benefit of the decedent's life insurance policy. Kan. Stat. Ann. § 59-513; *Harper v. Prudential Ins. Co. of Am.*, 662 P.2d 1264, 1271 (Kan. 1983) (applying the Kansas slayer statute to a life insurance policy). A jury convicted Arnold of reckless involuntary manslaughter under K.S.A. § 21-5405(a)(1). *See* Doc. 36-2 at 2, 11; Doc. 36-5 at 2–3. So the key question is whether a conviction of reckless involuntary manslaughter constitutes a conviction of "feloniously killing . . . another person."[1]

A federal court must interpret a state statute "according to state rules of statutory construction," *Finstuen v. Crutcher*, 496 F.3d 1139, 1148 (10th Cir. 2007), and extrapolate its meaning "according to traditional rules of statutory construction," *Phelps v. Hamilton*, 59 F.3d 1058, 1070 (10th Cir. 1995). The Kansas Supreme Court instructs that "[t]he Legislature's intent controls" statutory interpretation. *In re Interest of F.C.*, 482 P.3d 1137, 1141 (Kan. 2021) (quoting *Jarvis v. Kan. Dept. of Revenue*, 473 P.3d 869, 873 (2020)). The first step to determining the legislature's intent is to "examine the language of the provision and apply plain and unambiguous language as written." *Id.* (quotation omitted). Then, if any relevant language remains ambiguous, "a court may look to legislative history, background considerations, and canons of

---

[1] It is not clear whether Arnold has been "convicted" within the meaning of K.S.A. § 59-513 because his appeal has not yet been decided. But it is not necessary to resolve that issue in this case because Mockobey cannot establish that Arnold was convicted of feloniously killing his father. *See generally Frantz v. Frantz*, No. 21-3103, 2022 WL 792090, at *2 (10th Cir. Mar. 16, 2022) (discussing the lack of authority on this question and declining to resolve the issue because the outcome would be the same whether or not exhaustion is required for conviction).

construction to help determine legislative intent." *Id.* (quotation omitted).

The meaning of the word "feloniously" in K.S.A. § 59-513 is ambiguous. *Contra* Doc. 41 at 7; *see Rosenberger v. Nw. Mut. Life Ins. Co.*, 176 F. Supp. 379, 382 (D. Kan. 1959) (noting the "many definitions attributed to the word 'feloniously'"). Neither the word "feloniously" nor the phrase "feloniously killing" is defined by Kansas statutes. Generally speaking, words in a statute that are not defined are "interpreted and applied according to their common-law meanings." Antonin Scalia & Bryan A. Garner, Reading Law 320 (2012). Although the Kansas Supreme Court has not defined "feloniously" in the context of the slayer statute, it has generally interpreted the word "feloniously" to require intent—if not specific intent to commit the crime charged, then at least intent to commit another felony. *See, e.g.*, *State v. Clingerman*, 516 P.2d 1022, 1026 (Kan. 1973) (discussing the definition of "felonious" and concluding that it "in a legal sense refers to the doing of the act with a deliberate intent to commit a crime which crime is of the grade or quality of a felony"); *Guffey v. Cont'l Cas. Co.*, 197 P. 1098, 1099 (Kan. 1921) (holding in a robbery context that "felonious" includes intent to commit a robbery); *State v. Douglas*, 37 P. 172, 172 (1894) ("'Feloniously', in a legal sense, means 'done with the intent to commit a crime.'").

Mockobey rejects that conclusion, claiming that Arnold feloniously killed his father because Arnold was convicted of involuntary manslaughter, which is classified as a felony. Doc. 41 at 8. It is true that all illegal killings in Kansas are classified by statute as felonies. *See, e.g.*, Kan. Stat. Ann. § 21-5405(b)(1)(A) (defining reckless involuntary manslaughter as a "person felony"). But that position was expressly rejected by this District in a decision that traced the history of the Kansas slayer statute, along with its various amendments and constructions given to them, dating back to the early 1900s. *Rosenberger*, 176 F. Supp. at 382–83. In *Rosenberger*, the court concluded that the phrase "feloniously killing" applied "only [to] those who have been convicted of *intentional* killing." 176 F. Supp. at 383 (emphasis added) (permitting a beneficiary convicted of involuntary manslaughter to recover on the decedent's life insurance policies). Under that interpretation, a district court applying the Kansas slayer statute "need only inquire whether the conviction was for a degree of homicide wherein intent to kill is a

5

necessary ingredient." *Rosenberger v. Nw. Mut. Life Ins. Co.*, 182 F. Supp. 633, 634 (D. Kan. 1960).[2]

No court since *Rosenberger* has interpreted the word "feloniously" in K.S.A. § 59-513 differently. Several years after *Rosenberger* was decided, the Kansas Supreme Court noted *Rosenberger*'s interpretation of the statute, but "le[ft] the question open" as to whether K.S.A. § 59-513 requires intent. *United Trust Co. v. Pyke*, 427 P.2d 67, 76 (Kan. 1967) (declining to apply K.S.A. § 59-513 because the beneficiary "was not charged, tried or convicted of any offense").[3]

Neither has the Kansas Legislature charted a different course. The Kansas Legislature has twice amended the slayer statute but did not change the relevant wording nor define "feloniously" in such a way to broaden the term to include all killings classified as felonies. *See* 1970 Kan. Sess. Laws, ch. 225, § 1; 1995 Kan. Sess. Laws, ch. 105, § 1. This acquiescence indicates the legislature did not disapprove of *Rosenberger*'s holding that K.S.A. § 59-513 only operates for intentional homicides. *See generally* Scalia & Garner at 322 ("If a word or phrase has

---

[2] The 1960 *Rosenberger* opinion is a supplement to an opinion of the same name issued in 1959, and it corrects an erroneous legal statement. In 1959, the District Court held that the judgment rendered in the criminal trial could only be used as persuasive evidence of the question of intent, but that intent must still be found by a jury before the slayer statute would apply. *Rosenberger*, 176 F. Supp. at 383. The 1960 supplement recognized that as erroneous because the Kansas slayer statute does not require a determination of the beneficiary's intent. *Rosenberger*, 182 F. Supp. at 634. It only requires a *conviction* of feloniously killing another, so "the court need only inquire whether the conviction was for a degree of homicide wherein intent to kill is a necessary ingredient." *Id.*

[3] *Pyke* involved a murder-suicide with property held in joint tenancy. *See* 427 P.2d at 70–72. The Kansas Supreme Court held the slayer statute did not apply because the killer had committed suicide before being convicted, and the statute had no provision for that. *Id.* at 76. It also implied the slayer statute had preempted the common-law slayer rule. *Id.* When the Kansas Supreme Court revisited this preemption question fifteen years later, it explicitly overruled *Pyke*, noting that its rule was "ill-conceived" and adopting the near-universal common-law slayer rule "which bars the beneficiary of a life insurance policy who feloniously kills the insured from recovering under the policy whether convicted or not." *Harper v. Prudential Ins. Co. of Am.*, 662 P.2d 1264, 1271.

been . . . given a uniform interpretation by inferior courts . . ., a later version of that act perpetuating the wording is presumed to carry forward that interpretation.").

Mockobey protests that interpreting the slayer statute to require intent "would be inconsistent with and would contravene the meaning, effect and remedial purpose of the statute." Doc. 41 at 7. She argues that the legislature's choice to qualify the word "killing" with "feloniously" indicates it "intended to include all killings that were felonies by statute or at common law." Doc. 41 at 8. That argument is inconsistent with the history and the text of K.S.A. § 59-513.

The original incarnation of the Kansas slayer statute barred any person convicted of killing someone from receiving property as a result of that person's death. As a result, even unintentional killings—such as negligent homicide—would bar the killer from inheriting property from the decedent. *Hamblin v. Marchant*, 175 P. 678, 678–79 (Kan. 1918). But after *Hamblin*, the Kansas legislature amended the slayer statute to apply only to killings done "feloniously," a term defined in those days as distinguishing between intentional and unintentional conduct, rather than between crimes classified as felonies and misdemeanors. *Rosenberger,* 176 F. Supp. at 383 (describing contemporary thinking on the issue and citing the injustice that may result if a killing that was not intentional would preclude recovery).

*Rosenberger*'s construction is not only reasonable, but it is also consistent with the rule in Wyoming—the only other state whose slayer statute and definition of involuntary manslaughter are comparable to Kansas's.[4] Wyoming's slayer statute similarly bars any beneficiary who

---

[4] West Virginia's statute is facially similar to Kansas's, preventing any person "who has been convicted of feloniously killing another" from acquiring property from the decedent by will, insurance, or otherwise. W. Va. Code § 42-4-2. But courts have not needed to address whether "feloniously killing" means intentionally killing in that statute because in West Virginia, involuntary manslaughter is defined as a misdemeanor. W. Va. Code § 61-2-5; *see also Estate of Postlewait ex rel. Postlewait v. Ohio Valley Med. Ctr., Inc.*, 591 S.E.2d 226, 233 (W. Va. 2003) (holding that "the provisions of the slayer statute simply could not be invoked" because the beneficiary was only charged with involuntary manslaughter, which was not a felony).

"feloniously takes . . . the life of another" from taking that person's life insurance proceeds. Wyo. Stat. Ann. §§ 2-14-101(a), (b). And like Kansas, Wyoming defines involuntary manslaughter as a felony. *Id.* § 6-2-105. Nevertheless, the Wyoming Supreme Court has held that its slayer statute's requirement that a killing was done "feloniously" means that the killing must have been intentional. *Dowdell v. Bell*, 477 P.2d 170, 173 (Wyo. 1970) (interpreting the predecessor to Wyoming's current slayer statute).

Based on this state of affairs, it appears likely that the Kansas Supreme Court would agree with *Rosenberger* and conclude that conviction of intentional homicide is required to trigger the Kansas slayer statute. *See Finstuen v. Crutcher*, 496 F.3d 1139, 1148 (10th Cir. 2007) (requiring district courts to predict how the highest state court would resolve a

---

Alaska also precludes any "individual who feloniously kills the decedent" from benefitting from the decedent's estate. Alaska Stat. § 13.12.803(a). The Alaska Supreme Court held that this "encompasses intentional as well as unintentional homicides." *In re Estate of Blodgett*, 147 P.3d 702, 706 (2006). It noted a significant amendment of that statute: The original version precluded recovery by anyone who "feloniously *and intentionally* kills the decedent." *Id.* at 705 (citing 1972 Alaska Sess. Laws ch. 78, § 1). A 1988 amendment removed the intentionality requirement, and a subsequent amendment the following year added a provision permitting a court to set aside the slayer statute if the conviction was for "an unintentional felonious killing" and application of the statute "would result in a manifest injustice." *Id.* at 705–06 (first citing 1988 Alaska Sess. Laws ch. 164, §§ 3–8, then citing 1990 Alaska Sess. Laws ch. 11, § 1, and then quoting Alaska Stat. § 13.12.803(k)). So even though its wording is nearly identical to the Kansas slayer statute, the Alaska slayer statute's structure and history clarify that unintentional killings fall within its ambit.

In *Blodgett*, the Alaska Supreme Court noted that "the great majority of state slayer statutes require that the homicide be intentional," but that Kansas appeared to be in the minority of states whose slayer statutes do not require intent. 147 P.3d at 707 n.35. Without mentioning *Rosenberger*, it interpreted Kansas's statute as "includ[ing] all felonious killings" and implied that "involuntary and reckless homicide" would bar a beneficiary from inheriting because they are classified as felonies. *Id.* This dicta appears wrong. *See Rosenberger*, 176 F. Supp. at 383. Indeed, the concurrence in *Blodgett* noted the absence of Kansas state cases discussing the matter, *Rosenberger*'s refusal to apply the Kansas slayer statute to negligent homicide, and the fact that the statute "is essentially unchanged since *Rosenberger*." *Id.* at 712 n.5 (Eastaugh, J., concurring) (citing *Rosenberger*, 176 F. Supp. at 382–83).

question of ambiguous law). And on that construction, Arnold's conviction for involuntary manslaughter is insufficient to satisfy the slayer statute's prohibition. *See* Kan. Stat. Ann. § 21-5405(a)(1) (establishing the mens rea of recklessness); *see also State v. Louis*, 384 P.3d 1, 8 (Kan. 2016) (recognizing intent to kill is not an element of the offense of reckless manslaughter). Mockobey is therefore not entitled to summary judgment under K.S.A. § 59-513.

**B**

Even when the slayer statute does not apply, the common-law slayer rule may still bar a beneficiary from receiving life insurance proceeds. *Harper v. Prudential Ins. Co. of Am.*, 662 P.2d 1264, 1271 (Kan. 1983). Unlike the slayer statute, the common-law rule may preclude recovery even without a conviction. *Id.* But felonious killing remains an element: The Kansas slayer rule "bars the beneficiary of a life insurance policy who feloniously kills the insured from recovering under the policy whether convicted or not." *Id.*

No Kansas authority has resolved whether a reckless killing would trigger application of the common-law slayer rule. But there are two main reasons to believe that the Kansas Supreme Court, if presented with the issue, would hold that intentional conduct is required.

*First*, the common-law slayer rule requires intent to kill the insured. Restatement (Third) of Restitution and Unjust Enrichment § 45 (2023) (defining "slayer" as "a person who kills another . . . by an act that is . . . intentional"). As a result, courts across the United States have almost uniformly refused to apply the slayer rule to involuntary manslaughter. *See, e.g.*, *Plumley v. Bledsoe*, 613 S.E.2d 102, 104–05 (W. Va. 2005) (requiring either a "conviction for felonious killing," defined as a killing in which intent is an element, or other evidence that the killing was intentional "to bar the slayer from obtaining property or life insurance proceeds"); *Diep v. Rivas*, 745 A.2d 1098, 1102 (Md. 2000) (noting that the slayer rule does not apply to involuntary manslaughter (citing *Schifanelli v. Wallace*, 315 A.2d 513, 519 (Md. 1974)); *Cheatle v. Cheatle*, 662 A.2d 1362, 1365 (D.C. 1995) (requiring "proof in a civil proceeding by a preponderance of the evidence of an intent to cause death" to trigger the slayer rule); *Moore v. State Farm Life Ins. Co.*, 878 S.W.2d 946, 949 (Tenn. 1994) (refusing to apply the slayer rule because the beneficiary "did not intend to kill his wife" during an automobile accident); *Com. Travelers Mut. Acc. Ass'n v. Witte*, 406 S.W.2d 145, 149 (Ky. 1966) (refusing to apply the slayer rule "to an unintentional homicide, even

though it may have been unlawful by reason of negligence or gross negligence"); *Greer v. Franklin Life Ins. Co.*, 221 S.W.2d 857, 859–60 (Tex. 1949) (noting that courts do not "bar the beneficiary in cases of negligent homicide or 'involuntary manslaughter'"); *Minasian v. Aetna Life Ins. Co.*, 3 N.E.2d 17, 19 (Mass. 1936) (refusing to apply the slayer rule "to a manslaughter where there was no intentional injury of a kind likely to cause death"); *Congleton v. Sansom*, 664 So. 2d 276, 280 (Fla. Dist. Ct. App. 1995) (holding that "involuntary manslaughter does not require intent and so does not, under common law principles, disqualify the perpetrator from taking an interest in property devolving as a result"); *Pan Am. Life Ins. Co. v. Hancock*, 415 So.2d 422 (La. Ct. App. 1982) (finding that "a beneficiary is not deprived of the proceeds of a life insurance policy if he accidentally or unintentionally kills the insured"); *Jackson v. Prudential Ins. Co. of Am.*, 254 A.2d 141, 145–47 (N.J. Super. Ct. Law Div. 1969) (noting that involuntary manslaughter "does not bar the beneficiary's rights under [a life insurance] policy" because the true test of the slayer rule "is whether the beneficiary intentionally took the life of the insured"); *Beene v. Gib. Indus. Life Ins. Co.*, 63 N.E.2d 299, 292–93 (Ind. App. 1945) (declining to apply the slayer rule because "there [wa]s a total absence of evidence that the killing was intentional"); *Throop v. W. Indem. Co.*, 193 P. 263, 264 (Cal. Dist. Ct. App. 1920) ("[A] death which is unintentional, though caused by some neglect or unlawful act of the beneficiary, . . . ought not to defeat the policy." (quoting *Schreiner v. High Ct. of Ill. Cath. Ord. of Foresters*, 35 Ill. App. 576, 580 (Ill. App. Ct. 1889)); *Schreiner*, 35 Ill. App. at 580; *Hull v. Metro. Ins. Co.*, 26 Pa. D. 197 (Pa. Mun. Ct. 1917) (considering it "iniquitous" to apply the slayer rule "to a beneficiary whose *unintentional* act results in the death of the insured"); *In re Wolf*, 150 N.Y.S. 738, 741–43 (N.Y. Surr. Ct. 1914) (declining to apply the slayer rule to a man who accidentally killed his wife while attempting to kill her lover "because he had not the slightest intention of killing his wife and profiting by her death, which is the very essence of the equitable bar"). The two holdouts are North Carolina and Washington, whose slayer rules appear to operate for certain involuntary homicides. *Quick v. United Ben. Life Ins. Co.*, 213 S.E.2d 563, 568 (N.C. 1975) (disqualifying a life insurance beneficiary because "the killing, although unintentional, nonetheless resulted from her culpable negligence, that is conduct incompatible with a proper regard for human life"); *Parrot-Horjes v. Rice*, 276 P.3d 376, 380 (Wash. Ct. App. 2012) (noting the jury form asked whether the beneficiary "intentionally or recklessly caused the death which would preclude her enrichment under the common law slayer rule"). It seems likely that the Kansas Supreme Court, if presented with the

question, would adopt the majority rule and require intentional conduct before applying the slayer rule. *See, e.g.*, *Harper*, 662 P.2d at 1271 (adopting the majority rule of applying the doctrine whether or not there has been a conviction).

*Second*, the Kansas Supreme Court described the common-law rule in a way that mirrored the existing statutory language of K.S.A. § 59-513. In *Harper*, the Kansas Supreme Court held that a conviction was not required for the common-law rule to apply. 662 P.2d at 1271. That is where the common-law rule is broader than the statute. But when defining the rule, the Kansas Supreme Court used language that mimicked the slayer statute: "we should adopt the common-law rule . . . which bars the beneficiary of a life insurance policy who *feloniously kills* the insured from recovering under the policy whether convicted or not." *Id.* (emphasis added). Utilizing the "feloniously kills" formulation that mimics the statutory language suggests the phrase has a consistent meaning. Indeed, Mockobey fails to explain why the Kansas Supreme Court would interpret that phrase in the common-law rule differently from the statute.

This formulation of the common-law rule precludes summary judgment for Mockobey on the current record. The uncontroverted facts do not establish that Arnold intended to kill his father. To be sure, there are facts from which a factfinder may make that determination: Arnold, trained in the handling and operation of a firearm, removed the gun from his father's holster during a physical altercation, disengaged the gun's safety, and pointed it at his father, and a bullet from that gun struck his father in the head at close range. But the summary judgment evidence does not compel that conclusion. Intent is a factual determination, not a question of law. *See State v. Collins*, 461 P.3d 828, 838 (Kan. 2020) (noting that intent is a factual finding to be determined by a trial court); Fed. R. Civ. P. 56(a) (permitting summary judgment to be entered only if "there is no genuine dispute as to any material fact"). And Mockobey does not allege or attempt to establish that Arnold intended to kill his father. Instead, her focus has been on the fact that Arnold has been convicted of a felony. That is insufficient to establish an entitlement to judgment as a matter of law. Mockobey's motion for summary judgment based on the common-law slayer rule is therefore denied.

### III

For the foregoing reasons, Mockobey's motion for summary judgment, Doc. 36, is DENIED.

It is so ordered.

Date: March 24, 2023                     s/ Toby Crouse
                                        Toby Crouse
                                        United States District Judge